<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| DONALD HIGGS, | : | Civil No.: 07-5158 (RMB) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| C/O SUEY, et al., | : | |
| | : | |
| Defendants. | : | |

---

**APPEARANCES:**

Donald Higgs, <u>Pro</u> <u>Se</u>
# 285252/486338
Mid-state Correctional Facility
P.O. Box 866
Wrightstown, NJ 08562

**BUMB**, District Judge

Plaintiff, Donald Higgs, currently confined at the Mid-state Correctional Facility, Wrightstown, New Jersey seeks to file this civil rights action <u>in</u> <u>forma</u> <u>pauperis</u>, pursuant to 28 U.S.C. § 1915. Based on Plaintiff's declaration of poverty and a review of his prison account statement, Plaintiff's request to proceed <u>in</u> <u>forma</u> <u>pauperis</u> will be granted.

At this time, the Court must review the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such

relief.  For the following reasons, the complaint will be dismissed.[1]

## <u>BACKGROUND</u>

Plaintiff seeks to sue a number of corrections officers and other prison personnel alleging that his constitutional rights have been violated.  He cites as bases for jurisdiction 42 U.S.C. § 1983 (civil action for deprivation of rights), 42 U.S.C. § 1985(3) (conspiracy), and 18 U.S.C. § 242 (making deprivation of rights a crime).

Plaintiff states that he was paroled from state custody in 2003, and then returned to state custody on a parole violation. On April 13, 2005, he was placed in the Southern State Correctional Facility in Temporary Close Custody/Protective Custody status because of gang concerns.  On May 18 2005, Plaintiff contends that "something was placed in Plaintiff's food." (Complaint, DH5).  The next day, on May 19, 2005, various corrections officers came to Plaintiff's cell dressed in riot gear and had a conversation regarding Plaintiff's girlfriend being a federal employee.  (Complt., DH6).  The day after that, on May 20, 2005, Plaintiff was sent to Riverfront State Prison;

---

[1]  The Court notes that according to the New Jersey Department of Corrections website, <u>http: //www.state.nj.us /corrections/,</u> Plaintiff was released from custody on March 2, 2008.  He has not yet provided a new address to the Clerk of the Court.

and the day after that, on May 21, 2005, defendant Wastco entered Plaintiff's cell, looked at his mail, and left.  (Complt., DH6).

Plaintiff alleges that "over the next several days, gang members along with officer Coney plot[t]ed to commit bodily harm to plaintiff when and during shower time."  (Complt., DH6-7). Officer Coney finally told Plaintiff to take a shower.  Plaintiff spoke to defendant Randle who told him that Plaintiff, if he "wanted to get out of this" had to sign a statement that he wanted to go into protective custody until his release. Plaintiff states that he signed, and on June 2, 2005, was sent to New Jersey State Prison.  (Complt., DH7).  After two weeks, he was seen by the parole board and denied parole.

Plaintiff states that from June through November, while housed at New Jersey State Prison, he had "difficulty" calling home and that his family kept writing him to tell him to call home.  (Complt., DH7).

In December of 2005, a direct relative of "a name deceased," inmate Francis, moved two cells away from Plaintiff.  (Complt., DH7-8).

On December 12, 2005, after Plaintiff had called family members to provide names of correctional officers involved in "incidents at prior prisons," Plaintiff contends:

> that night the same officers from Southern State, along with other officers, dressed in Ku Klux Klan garb, one c/o Sparks standing at end of the t[ie]r and the others on the t[ie]r above directly over plaintiff's cell,

3

> plot[t]ed with gang members David Allen, Francis and
> Castro to kill plaintiff, with Officer Aveno having
> unlocked cell doors with key, leaving only double lock
> to secure cell doors with another c/o, John Doe #2
> standing at the end of t[ie]r by double lock box.
> Plaintiff stuck a finger nail clipper handle in key
> hole to prevent attack from happening and to where c/o
> Aveno saw plaintiff doing so and to where c/o Coughlin
> #2 appeared at cell door and wrote charge for having
> done so.  Once it was determined that mai[n]tenance had
> to come the next day, plaintiff overheard c/o Suey
> state "We'll get'em tomorrow."

(Complt., DH8).  Plaintiff states that he received "15 days" for

the charge.  Plaintiff further states that:

> . . . inmate David Allen stood outside plaintiff's cell
> with a gun over the next several days, waiting for
> plaintiff to go to sleep or be off guard to attempt to
> shoot him in the face like deceased mentioned was shot
> while Francis, Castro and other gang members stood
> outside end of t[ie]r.  The gun was later found and
> published in the newspaper after plaintiff left New
> Jersey State Prison and sent to mid-state.

(Complt., DH9).  Plaintiff alleges that defendant Aveno spoke

with inmate Francis outside of Plaintiff's door and said that the

state "got it out for" Plaintiff too.  Inmate Francis also stated

"yeah, the prosecutor want my boy Dee to max out.  'Dee'

referring to Plaintiff."  (Complt., DH9).

On March 22, 2006, Plaintiff was sent to Mid-state

Correctional Facility, but had phone problems and could not call.

His mother sent him letters at the prison.  Plaintiff had a

parole hearing on October 5 (year not stated), where he was given

an 18-month parole denial and was told to "stay out of trouble

with gang members."  (Complt., DH10).

4

Plaintiff states that since at Mid-state, every piece of mail to his spouse and family has been opened and "contents concerning occurrences taken out and or returned to plaintiff." His phone conversations are monitored and his mail opened and read.  (Complt., DH10-11).  Plaintiff states that he is being retaliated against for filing prior actions.  (Complt., DH14). He also states that he has legally maxed out his sentence. (Complt., DH10).

Plaintiff asks for monetary relief.  (Complt., DH22).

**<u>DISCUSSION</u>**

**A.**   **<u>Standard of Review</u>**

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous."  <u>Santana v. United States</u>, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. § 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants.

When determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 520 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  Furthermore, fantastical or delusional claims that are clearly baseless are insufficient to withstand the court's evaluation for frivolity dismissal under § 1915(e)(2)(B)(i).  See Denton v. Hernandez, 504 U.S. 22, 33 (1992); Neitzke v. Williams, 490 U.S. 319, 327 (1989).

**B.   Section 1983**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory . . . subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the laws or Constitution of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

In this case, liberally construing the complaint, Plaintiff alleges that he has been harassed by certain state actor defendants.  He also claims that he is illegally detained past his max out date, and asserts a claim of interference with personal mail and phone calls.

**1.   Harassment**

This Court discerns the following acts that can be liberally construed as acts of harassment against Plaintiff by state actors:

Plaintiff states that on May 19, 2005, corrections officers dressed in riot gear came to the door of his cell and had a conversation about Plaintiff's girlfriend working for the federal

government.  The next day Plaintiff was transferred to another
prison.  (Complt., DH5-6).

Plaintiff states that on December 12, 2005, corrections
officers dressed in "Ku Klux Klan garb" stood around Plaintiff's
tier and cell, plotted with gang members to kill Plaintiff, and
manipulated the cell locks.  Plaintiff jammed a finger nail
clipper into the lock to "prevent [an] attack from happening."
It appears that no action was taken against Plaintiff except an
administrative charge presumably for jamming the lock.  (Complt.,
DH8).

Plaintiff states that on the night of December 12, 2005, a
corrections officer and an inmate stood in the vicinity of his
cell door and had a discussion about Plaintiff.  (Complt., DH9).

The Eighth Amendment, applicable to the States through the
Fourteenth Amendment, prohibits punishments that are "cruel and
unusual."  An Eighth Amendment claim includes both an objective
component, whether the deprivation of a basic human need is
sufficiently serious, and a subjective component, whether the
officials acted with a sufficiently culpable state of mind.
See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective
component is contextual and responsive to "'contemporary
standards of decency.'"  Hudson v. McMillian, 503 U.S. 1, 8
(1992).  The subjective component follows from the principle that
"'only the unnecessary and wanton infliction of pain implicates

the Eighth Amendment.'" _See_ _Farmer v. Brennan_, 511 U.S. 825, 834 (1994) (quoting _Wilson_, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); _Rhodes v. Chapman_, 452 U.S. 337, 345 (1981).  What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation.  _See_ _Hudson_, 503 U.S. at 5.

As the United States Supreme Court has stated, "intentional harassment of even the most hardened criminals cannot be tolerated by a civilized society." _Hudson v. Palmer_, 468 U.S. 517, 528 (1984).  The Eighth Amendment protects prisoners against "calculated harassment." _Id._ at 530.  Generally, however, mere verbal harassment does not give rise to a constitutional violation.  _See_ _McBride v. Deer_, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001)(taunts and threats are not an Eighth Amendment violation); _Oltarzewski v. Ruggiero_, 830 F.2d 136 (9th Cir. 1987) (vulgar language); _Rivera v. Goord_, 119 F. Supp.2d 327, 342 (S.D.N.Y. 2000)(verbal harassment does not violate inmate's constitutional rights); _Prisoners' Legal Ass'n v. Roberson_, 822 F. Supp. 185 (D.N.J. 1993); _Murray v. Woodburn_, 809 F. Supp. 383 (E.D. Pa. 1993); _Douglas v. Marino_, 684 F. Supp. 395 (D.N.J. 1988).  Racially discriminatory statements, racial slurs and epithets, without more, also do not establish liability under § 1983.  _See_ _Freeman v. Arpaio_, 125 F.3d 732, 738 (9th Cir.

9

1997)(verbal abuse directed at religious and ethnic background does not state a cognizable constitutional violation); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985); Shabazz v. Cole, 69 F. Supp.2d 177, 200-01 (D. Mass. 1999) ("without even a suggestion of physical injury, [defendants'] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct"); Haussman v. Fergus, 894 F. Supp. 142, 149 (S.D.N.Y. 1995); Prisoners' Legal Association, 822 F. Supp. at 187-189 & n.3 (corrections officer's use of racial slurs did not amount to constitutional violation); Wright v. Santoro, 714 F. Supp. 665, 667 (S.D.N.Y. 1989), aff'd, 891 F.2d 278 (2d Cir. 1989); Knop v. Johnson, 667 F. Supp. 467 (W.D. Mich. 1987), appeal dismissed, 841 F.2d 1126 (6th Cir. 1988).

Allegations that prison personnel have used threatening language and gestures also are not cognizable claims under § 1983.  See Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979) (defendant laughed at prisoner and threatened to hang him). However, threatening language coupled with the threatening use of a weapon and outrageous conduct by prison personnel may indicate a constitutional deprivation.  See Douglas, 684 F. Supp. at 398 (brandishing a butcher knife in close proximity to prisoner and threatening to kill him may amount to a constitutional violation); see also Northington v. Jackson, 973 F.2d 1518 (10th

Cir. 1992) (gun was put to prisoner's head); <u>Burton v.</u>
<u>Livingston</u>, 791 F.2d 97 (8th Cir. 1986)(guard threatened to shoot
prisoner).

In this case, Plaintiff's claims that the corrections
officers discussed his girlfriend, and that a corrections officer
and an inmate discussed Plaintiff outside of Plaintiff's cell do
not rise to the level of a constitutional violation, as the facts
alleged merely indicate verbal harassment, if that.

Plaintiff's claim regarding the officers dressing up in Ku
Klux Klan garb and standing on his tier and on the tier directly
above Plaintiff's cell, plotting with gang members to kill him,
appears clearly delusional and will be dismissed.  <u>See</u>, <u>e.g.</u>,
<u>Allen-Mensah v. O'Malley</u>, 2007 WL 412194 at *1 (3d Cir. Feb. 2,
2007) (unpubl.) (affirming judgment dismissing complaint alleging
that defendants experimented on plaintiff); <u>Caesar v. Megamillion</u>
<u>Biggame Lottery</u>, 193 Fed. Appx. 119, 120-21 (3d Cir. 2006)
(unpubl.) (affirming judgment dismissing complaint alleging
conspiracy to steal winning lottery tickets), <u>cert.</u> <u>denied</u>, 127
S. Ct. 1150 (2007); <u>Hines v. United States</u>, 166 Fed. Appx. 610,
611 (3d Cir. 2006) (unpubl.) (affirming judgment dismissing
complaint alleging "that the United States government and others
have tortured him with poisonous gas for the last 12 years
whenever he tried to study toward his career goals" as
"delusional, irrational, or wholly incredible"); <u>Trobovic v.</u>

11

Perry, 2007 WL 708880 (D.N.J. Mar. 5, 2007) (unpubl.) (dismissing as delusional Plaintiff's allegations regarding "a sweeping conspiracy" against him by GSA employees and an organization involving bulldogs).

Plaintiff has not alleged facts indicating that his Eighth Amendment rights have been violated.

### 2. Detention Past Max-Out Date

Plaintiff filed this action in October of 2007. In the complaint he alleges that his "max-out" date was March 2007. According to the Department of Corrections website, http://www.state.nj.us/corrections/, Plaintiff was released from custody on March 2, 2008, during the pendency of this action. Regardless, Plaintiff's claim for damages is not cognizable. Any decision in Plaintiff's favor that he was improperly held beyond his max-out date would necessarily entail a determination that Plaintiff was in fact entitled to a sooner release and that his sentence was being executed improperly. See Heck v. Humphrey, 512 U.S. 477 (1994).

### 3. Interference with Personal Mail and Phone Calls

Plaintiff states that at various stages during his incarceration, his personal mail was opened, and he had trouble calling his relatives. Plaintiff makes no such allegations concerning legal mail or calls to attorneys.

12

As Plaintiff complains about non-legal mail, it has been held that:  "In the First Amendment context, ... a prison inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974) (evaluating constitutionality of limiting one channel of communication with those outside of prison through review of adequacy of alternative channels of communication); see also Thornburgh v. Abbott, 490 U.S. 401 (1989) (evaluating regulations governing receipt of subscription publications by federal prison inmates).  Thus, to the extent not inconsistent with their status as prisoners or with legitimate penological objectives, inmates have a First Amendment right to communicate with "friends, relatives, attorneys, and public officials by means of visits, correspondence, and telephone calls." Owens-El v. Robinson, 442 F. Supp. 1368, 1386 (W.D. Pa.) (citation omitted), supplemented and finalized, 457 F. Supp. 984 (W.D. Pa. 1978), aff'd in part and vacated in part on other grounds sub nom., Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979).

Here, Plaintiff's mail interference claim does not state a constitutional violation.  Plaintiff was afforded other means to contact his relatives.  Legitimate penological objectives exist for opening and examining Plaintiff's non-legal mail.  See Dean

13

v. Johnson, 381 F. Supp. 495 (D.C. Pa. 1974)(stating that unlike prisoner's right to correspond with courts or counsel, prisoner's right to mail personal letters to family and friends is not absolute).

Additionally, inmates must be afforded reasonable access to telephones so as not to infringe the First Amendment or impede meaningful access to the courts in violation of the Fourteenth Amendment.  See Inmates of Allegheny County Jail v. Wecht, 565 F. Supp. 1278, 1284 (E.D. Pa. 1983); Owens-El v. Robinson, 442 F. Supp. 1368, 1386 (W.D. Pa. 1978), aff'd in part and vacated in part on other grounds sub nom., Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979).  Nonetheless, inmates' rights to communicate, even with legal counsel, are not unlimited.  See Aswegan v. Henry, 981 F.2d 313 (8th Cir. 1992). Prison officials can limit communications, particularly telephone communications, to ensure, safety, security, and the orderly operation of their institution.  See Griffin-El v. MCI Telecommunications Corp., 835 F. Supp. 1114, 1122-23 (E.D. Mo. 1993), aff'd, 43 F.3d 1476 (8th Cir. 1994).  In particular, courts have approved the installation of collect-only telephone systems and, for non-legal calls, some degree of monitoring to control instances of inmate telephone fraud, harassment of crime victims, or disputes among inmates over telephone use.  See, e.g., Wooden v. Norris, 637 F. Supp. 543 (M.D. Tenn. 1986)

14

(installation of coinless telephones justified given evidence
that prior coin-operated system led to fraudulent billing,
vandalism, inmate calls to victims of their crimes, and illicit
trade).

Numerous and sometimes stringent restrictions on personal
telephone calls by inmates have been upheld as constitutional.
Most of these restrictions involve limits on the numbers of calls
permitted per week, limits on what persons can be called, and
time limits on individual calls.

In the present case, Plaintiff merely states that he had
"trouble" calling his relatives, but that they were able to reach
him by mail.  He does not state that he was denied access to
telephones or that he was not permitted to make calls.  Thus, any
potential claims regarding the denial of telephone access must be
dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure
to state a claim.

**C.**   **Section 1985**

Plaintiff asserts as a basis for jurisdiction 42 U.S.C.
§ 1985(3), "Conspiracy to interfere with civil rights."

Title 42 U.S.C. § 1985(3) reads, in pertinent part:

If two or more persons in any State or Territory
conspire or go in disguise on the highway or on the
premises of another, for the purpose of depriving,
either directly or indirectly, any person or class of
persons of the equal protection of the laws, or of
equal privileges and immunities under the laws; or for
the purpose of preventing or hindering the constituted
authorities of any State or Territory from giving or

15

> securing to all persons within such State or Territory
> the equal protection of the laws; ... in any case of
> conspiracy set forth in this section, if one or more
> persons engaged therein do, or cause to be done, any
> act in furtherance of the object of such conspiracy,
> whereby another is injured in his person or property,
> or deprived of having and exercising any right or
> privilege of a citizen of the United States, the party
> so injured or deprived may have an action for the
> recovery of damages occasioned by such injury or
> deprivation, against any one or more of the
> conspirators.

42 U.S.C. § 1985(3).

> To state a claim under § 1985(3), one must allege:

> (1) a conspiracy; (2) for the purpose of depriving,
> either directly or indirectly, any person or class of
> persons of the equal protection of the laws, or of
> equal privileges and immunities under the laws; and (3)
> an act in furtherance of the conspiracy; (4) whereby a
> person is either injured in his person or property or
> deprived of any right or privilege of a citizen of the
> United States.

United Broth. of Carpenters and Joiners of America, Local 610,

AFL-CIO v. Scott, 463 U.S. 825, 829 (1983).  With respect to the

second element, the conspiracy must be motivated by "some racial,

or perhaps otherwise class-based, invidiously discriminatory

animus."  Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).  The

classes protected by § 1985(3) are narrowly-drawn and the Supreme

Court has recognized only claims by victims of racially motivated

conspiracies: minorities and, perhaps, their political

supporters.  See United Broth. of Carpenters and Joiners, 463

U.S. at 837-39.

16

Further, "it is well-established that § 1985(3) does not itself create any substantive rights; rather, it serves only as a vehicle for vindicating federal rights and privileges which have been defined elsewhere." Brown v. Philip Morris Inc., 250 F.3d 789, 805 (3d Cir. 2001)(citing Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 376, (1979)).

In this case, this Court has found that Plaintiff's allegations that corrections officers dressed in Ku Klux Klan garb and conspired with gang members to kill him was wholly delusional.  Thus, it follows that Plaintiff has not alleged facts indicating a conspiracy, and does not demonstrate jurisdiction under § 1985(3).

**D.   Section 242**

Plaintiff also alleges jurisdiction under 18 U.S.C. § 242. Section 242 is a federal criminal statute, and provides, in pertinent part:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State ... to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; ... .

18 U.S.C. § 242.

As detailed above, it is Plaintiff's contention that the defendants engaged in civil rights violations during the course

17

of his incarceration.  Authorities are in agreement, however, that the submission by a private party of a complaint under § 242 is not the appropriate manner in which to initiate criminal proceedings.

> A private person may not prosecute a federal criminal complaint.  Prosecution of a federal crime is the prerogative of the United States through the attorney general and his delegates, the United States attorneys.  28 U.S.C. § 516 ("Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General."); The Confiscation Cases, 74 U.S. 454, 457 (1868) ("Public prosecutions, until they come before the court to which they are returnable, are within the exclusive direction of the district attorney, [...]"); ...; United States ex rel. Savage v. Arnold, 403 F. Supp. 172, 174 (E.D. Pa. 1975); United States v. Panza, 381 F. Supp. 1133, 1133-35 (W.D. Pa. 1974) (reciting history of rule); ... .

Peters v. Beard, 2006 WL 2174707 (M.D. Pa. June 13, 2006) (Report and Recommendation) (citations omitted), adopted by 2006 WL 2175173 (M.D. Pa. Aug. 1, 2006).  See also Higgins v. Neal, 52 F.3d 337, 1995 WL 216920 (10th Cir. 1995) (unpubl.) (collecting cases); Caracter v. Avshalumov, 2006 WL 3231465 (D.N.J. Nov. 8, 2006) (collecting cases); Stoll v. Martin, 2006 WL 2024387 (N.D. Fla. July 17, 2006) (collecting cases).

Nevertheless, if a purported criminal complaint warrants action, a Court may refer it to the United States Attorney for action.  See Savage, 403 F. Supp. at 174.  The commencement of a criminal action is governed in part by Federal Rules of Criminal

Procedure 3 and 4, which provide some guidance in determining whether a purported criminal complaint merits reference to the United States Attorney.  Rule 3 provides, "The complaint is a written statement of the essential facts constituting the offense charged.  It must be made under oath before a magistrate judge or, if none is reasonably available, before a state or local judicial officer."  Rule 4 provides, in pertinent part, "If the complaint or one or more affidavits filed with the complaint establish probable cause to believe that an offense has been committed and that the defendant committed it, the judge must issue an arrest warrant to an officer authorized to execute it."

Here, Plaintiff's conclusory allegations of "conspiracy" and his other allegations are not sufficient to establish probable cause to believe that the defendants violated § 242.  See United States v. Senak, 477 F.2d 304 (7th Cir.), cert. denied, 414 U.S. 856 (1973).  This Court perceives no reason, on the basis of the facts before it, to refer this matter to the United States Attorney.

## CONCLUSION

For the reasons set forth above, Plaintiff's complaint will be dismissed.  An appropriate order follows.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: March 12, 2008

19